UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-14022-CIV-WILLIAMS/MAYNARD

AVION LAWSON,

    Plaintiff,

v.

CAPTAIN K. WEINRICH, WARDEN
ROBINSON, OFFICER HILL,
OFFICER N. COOK,

    Defendants.
_____/

## REPORT & RECOMMENDATION

**THIS CAUSE** is before me on a *pro se* civil rights complaint ("Complaint") brought under 42 U.S.C. § 1983 by Plaintiff Avion Lawson ("Plaintiff"), alleging constitutional violations while an inmate at Martin Correctional Institution ("Martin CI"). DE 1. Plaintiff has also filed two motions to proceed *in forma pauperis* ("IFP"), with one styled as an "emergency" motion. DE 3, DE 5. This matter is referred to me for the appropriate disposition of non-dispositive pretrial motions. DE 9.

On March 13, 2024, I held a limited evidentiary hearing focused narrowly on the issue of alleged imminent danger. At the hearing, Plaintiff and Martin CI's Assistant Warden John Holtz testified under oath. The parties also introduced documentary exhibits, including Plaintiff's medical and confinement records during the relevant timeframe. Following the hearing, Plaintiff filed additional motions asserting imminent danger, requesting injunctive relief, seeking to file an amended complaint, and—most recently—another "emergency" motion requesting Court intervention to prevent "imminent death and danger of serious physical injury." DE 24, DE 25, DE 27.

Having carefully considered this matter and being fully advised, I respectfully recommend that Plaintiffs' pending IFP motions be **DENIED**, that his Complaint be **DISMISSED WITHOUT PREJUDICE** under the "three strikes rule" of the Prison Litigation Reform Act ("PLRA"), that all pending motions be **DENIED AS MOOT**, and that this case be **CLOSED**.

## STANDARD OF REVIEW

A prisoner seeking to proceed IFP in a civil action in federal court must comply with the mandates of the PLRA, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996). Section 1915(g) of the PLRA provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The above provision is commonly known as the three strikes rule. To count as a strike under § 1915(g), a prior dismissal must be "[o]n the grounds that the claims were frivolous, malicious, or failed to state a claim." *Daker v. Bryson*, 784 F. App'x 690, 691-92 (11th Cir. 2019) (quoting *Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1283-84 (11th Cir. 2016)); *see also Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1723, 1726 (2020) ("The point of the PLRA, as its terms show, was to cabin not only abusive but also simply meritless prisoner suits."). Where a plaintiff is a three-strikes litigant and has not prepaid the Court's filing fee, "[t]he proper procedure is for the district court to dismiss the complaint without prejudice . . ." *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002); *Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999) (if, after receiving three "strikes," a prisoner files a new suit while moving to proceed IFP, "[a] court must dismiss the prisoner's case"). A three-strikes plaintiff cannot pay the filing fee after initiating suit as a retroactive cure. *Dupree*, 284 F.3d at 1236 ("The prisoner cannot simply pay the filing fee

after being denied [IFP] status. He must pay the filing fee at the time he initiates the suit.").

The Eleventh Circuit has upheld the constitutionality of the three strikes rule as not violating a prisoner's First Amendment right of access to the courts, the doctrine of separation of judicial and legislative powers, the Fifth Amendment's right to due process of law, or an inmate's right to equal protection. *See Rivera v. Allin*, 144 F.3d 719, 727-28 (11th Cir. 1998), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

One exception to the three strikes rule is where a prisoner indicates that he is in imminent danger of serious physical injury. *Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004). To come within this "imminent danger" exception, a prisoner must be in imminent danger at the time he files suit in district court, not at the time of the alleged incident serving as the basis for the complaint. *Medberry*, 185 F.3d at 1193 (holding that a three-strike prisoner was not "under imminent danger of serious physical injury" because the threat he alleged at the correctional institution "had ceased prior to the filing of his Complaint"). Allegations that a prisoner faced past danger are insufficient to trigger this exception. *Id.*; *see also Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004) (the "[p]risoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)").

In determining whether a *pro se* prisoner is in imminent danger, a court must review the prisoner's complaint "as a whole," construing it liberally and accepting his allegations as true. *Brown*, 387 F.3d at 1350. Exhibits attached to the Complaint "become[ ] part of the pleading for all purposes[.]" *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (citing Fed. R. Civ. P. 10(c)). In fact, "[a] district court can generally consider exhibits attached to a complaint ... and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

To adequately allege imminent danger of serious physical injury in an excessive force action against prison officials, a prisoner must allege physical mistreatment and specific danger of additional abuse.  *Smith v. Clemons*, 465 F. App'x 835, 837 (11th Cir. 2012) (prisoner established imminent danger where prisoner's first complaint alleged that prison officials punched him in gut nine days after he had hernia surgery, and his second complaint alleged new threats of severe violence by same prison official that punched him); *see also Jacoby v. Lanier*, 850 F. App'x 685 (11th Cir. 2021) (prisoner adequately alleged threat of imminent danger where complaint identified prison officials who had abused him by name, alleged past harms and specific threats of future harm, including that officers repeatedly assaulted inmate, that inmate reported the officers for their wrongful conduct but no prison personnel intervened to protect him, and that officers threatened to seriously harm inmate if he did not drop the lawsuit).  General or conclusory allegations are "insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury."  *Brown*, 387 F.3d at 1350 (citing with approval Eighth Circuit precedent rejecting conclusory allegations as insufficient to satisfy imminent danger exception); *Sutton v. Dist. Atty's Office*, 334 Fed. Appx. 278, 279 (11th Cir. 2009) (per curiam) (rejecting general claims of stress, anxiety, depression, and further deterioration of life as insufficient to satisfy imminent danger exception).

## **DISCUSSION**

Here, Plaintiff concedes that the three strikes rule applies to him.  Other federal cases confirm this admission.  *See, e.g., Lawson v. Rueda, et al.*, Case No. 24-14045-Civ-Middlebrooks, DE 5 (S.D. Fla. Feb. 26, 2024) (dismissing § 1983 Complaint filed by Plaintiff without prejudice under the three strikes rule and comprehensively summarizing Plaintiff's prolific civil case filings

in Florida federal courts, including specific identification of four cases[1] that qualify as strikes under § 1915(g)); *Lawson v. Montoya, et al.*, 2023 WL 5176378 (S.D. Fla. Aug. 11, 2023) (finding Plaintiff subject to the three strikes rule and dismissing his § 1983 Complaint with prejudice as frivolous and malicious).

Plaintiff's filing of over three qualifying "strikes" renders him ineligible to proceed IFP in any new civil actions or appeals, including this case, "unless [he] is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Plaintiff seeks to overcome the three strikes rule by invoking § 1915(g)'s imminent danger exception. To meet this exception, the Eleventh Circuit requires specific allegations of present imminent danger that may result in serious physical harm. *See Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004).

Plaintiff's *pro se* Complaint is signed January 11, 2024, and was filed in the Court record on January 26, 2024. DE 1. Construing his Complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), Plaintiff alleges that various correctional officers at Martin CI have battered and assaulted him and that he is "in imminent danger of serious physical injury and [that this] is a 'genuine emergency.'" DE 1 at 4. The Complaint describes an incident on January 4, 2024 when Plaintiff changed cell locations from one dormitory to another. *Id.* at 2-3. According to Plaintiff, Officer Hill was the receiving dormitory officer at the time and she called Plaintiff a "snitch" and said Plaintiff would "be dead by this weekend." *Id.* at 3. Plaintiff asked Officer Hill to stop

---

[1] The cited four cases are: *Lawson v. Leavins*, Case No. 15-00076-Civ-RS-EMT (N.D. Fla. May 5, 2015) (dismissing case as malicious under § 1915(e)(2)(B)(i)); *Lawson v. Barber*, Case No. 5:15-cv-00229-MP-EMT (N.D. Fla. Nov. 14, 2015) (dismissing case as malicious under § 1915(e)(2)(B)(i)); *Lawson v. Maldanado*, Case No. 21-12178-J (11th Cir. Dec. 15, 2021) (dismissing appeal as frivolous under § 1997(e)(2)(B)(i)); and *Lawson v. Simmons*, Case No. 2:22-cv-14249-Moore (S.D. Fla. Mar. 6, 2023), (DE 23 at 7) (dismissing case for "failure to raise a valid claim"). In addition to these four identified cases, a CM/ECF search reveals over ten other civil actions filed by Plaintiff in this District. Plaintiff's cases include one filed as recently as this month on March 4, 2024 invoking claims under §1983 against Florida Department of Corrections and others for alleged service of toxic and inadequate food to inmates. *See Lawson v. Aramark Correctional, et al.*, Case No. 24-14062-Civ-Williams, DE 1.

"putting [his] life in jeopardy" by calling him a snitch, to which Officer Hill responded that she "got something for you[]" and instructed Plaintiff to return to his original dormitory.  *Id.*

According to the Complaint, later that same night, at 3:00 A.M., Captain Weinrich escorted Plaintiff "to medical for pre-confinement" and asked Plaintiff why he changed dormitories.  *Id.*  Moments later, while Captain Weinrich stood by, "Officer Cook hit Plaintiff in the head with his radio knocking him to the floor" after which Officers Cook and another unidentified correctional officer began to "beat Plaintiff kicking, kneeing, choking and stomping him."  *Id.*  Plaintiff alleges that the beating officers made countless death threats "at point blank range" with radios and mace, and that Plaintiff was forced to kiss Captain Weinrich's shoe.  *Id.*  Plaintiff claims to have suffered resulting serious injuries, including knee abrasions, back pain, wrist cuts, jaw swelling, and a migraine headache.  *Id.*  During the encounter, Officer Cook allegedly yelled in Plaintiff's ear while pushing his face in dirt and indicated that "[i]t ain't over yet we gone[sic] kill you boy.  *Id.* at 4.  After the beating, Plaintiff says he was taken to confinement straight to a cell with no medical treatment.  *Id.*  The next day, January 6, 2024, Plaintiff told Warden Robinson about the officer beating and Warden Robinson allegedly responded "I guess you learned a f*#!ing lesson or two" and told Plaintiff that he would make sure his staff would "fulfill the next order with fries and a shake."  *Id.*

Plaintiff asserts that that he is in imminent danger of serious physical injury in two ways.  First, "at the time of filing this Complaint, Plaintiff is still and constantly under imminent danger of serious physical injury by Defendants whom [sic] plotted to injure and/or possibly kill Mr. Lawson as promised reprisal."  *Id.* at 2.  Second, Plaintiff states that he "is a mentally ill prisoner strongly contemplating suicide at the time of filing [ ]this Complaint 1915(g)."  *Id* at 4.  He mentions that he already "attempted to hang and kill himself" due to Defendants' alleged actions.

*Id.* at 2.[2]  Among other things, Plaintiff's Complaint requests an "immediate court order injunction for psychiatric treatment by mental health counsel to treat Plaintiff's suicidal attempts and behavior." *Id*.

Based on the seriousness of Plaintiff's allegations, I swiftly issued an Order directing the Clerk of Court to expeditiously notify appropriate prison officials of Plaintiff's allegations for them to act as they deemed appropriate. DE 10.  I also scheduled an evidentiary hearing to determine whether Plaintiff sufficiently alleged that he is under imminent danger of serious physical injury. DE 11.  The hearing was held before me on March 13, 2024.

At the hearing, Plaintiff testified that he's been incarcerated since age 14 serving a 30-year state sentence.[3]  He has a 7th grade education.  Plaintiff admitted to being a three-striker who has filed "quite a few" prior civil lawsuits.  Plaintiff has been incarcerated at Martin CI for the past five years during which time he claims he has gone "through retaliation and other excessive forces" including assaults by correctional officers.  Plaintiff recounted the January 5, 2024 incident alleged in his Complaint.  Plaintiff also described an instance where he and two other inmates were forced to strip naked in front of at least 8 female officers on camera as alleged retaliation.

When questioned about his suicidal ideation allegations, Plaintiff indicated that being incarcerated makes him want to "give up" and take matters into his own hands by hanging himself

---

[2] Plaintiff's "emergency" filing similarly maintains that Plaintiff is in "imminent danger of serious physical injury" at the time he filed his Complaint and application to proceed IFP.  DE 5 at 5.  His IFP application indicates that Plaintiff's "life is in jeopardy and [he has] also attempted to take his own life on multiple occasions meeting [the] imminent danger standard." DE 3 at 5.

[3] Plaintiff's 30-year state sentence follows his guilty plea and resulting conviction on multiple felony charges in a case stemming from his involvement with three other defendants, while the four were all teenagers.  The four defendants repeatedly raped an adult victim, beat her then-12-year-old son, and forced the victim to perform oral sex on her son. The teenagers then doused the two in chemicals to clean the crime scene and fled after discussing lighting the pair on fire.  *See State of Florida v. Avion Lawson*, Case No. 50-2007-CF-010255-AXXX-MB (15th Judicial Circuit Court of Florida, Palm Beach County, Criminal Division).  The case was widely reported in the news as the Dunbar Village rape case.  *See, e.g.,* "Youngest Dunbar Village Rape Defendant Sentenced to 30 Years," Palm Beach Post, March 31, 2012, available at:  https://www.palmbeachpost.com/story/news/crime/2012/03/31/youngest-dunbar-village-rape-defendant/7717773007/.

or cutting his wrists. Plaintiff claimed to have attempted suicide within the "last few weeks" of the hearing by tying a sheet around his neck and to a top bunk. He claimed that his cellmate stopped him.

Prior to the hearing, Plaintiff filed exhibits that included some of Plaintiff's medical and mental health records while incarcerated. During the hearing, I meticulously went through the records Plaintiff submitted from February 2024, which is nearest to when Plaintiff signed and filed his Complaint. DE 1. Plaintiff admitted that he requested and received regular mental health appointments from January to March 2024. Records submitted by Plaintiff confirm this testimony. For example, a treatment record from February 13, 2024 signed by Mental Health Professional (MHP) Salerno indicates that Plaintiff reported "depression 2-3 times per week, rating a 3 out of 10 in intensity," comments that "[c]lient appropriate for level of care at this time," and notes a plan to meet with Plaintiff for regular scheduled mental health checks. DE 19-1 at 35.[4] Another record from this date documents that Plaintiff was cooperative, appropriately groomed and attired, made good eye contact, was coherent, and was fully oriented as to time, place, person, and situation. *Id.* at 82. An ideation section documented "None" for suicidality, self-injury, and homicidality. *Id.* It was further noted that Plaintiff discussed wanting to be released from prison sooner, being involved in peer pressure as a young adult, and that behavioral therapy "worked on distress tolerance." *Id.*

A later treatment record from February 23, 2024 signed by MHP Salerno documents a "Mental Health Screening Evaluation" and indicates that Plaintiff reported the incident about having to strip in front of 8-10 female officers and said "[t]hey injured me in the back of my head. I guess I was feeling suicidal … I feel like they are picking on me. I'm not feeling suicidal right

---

[4] I acknowledge Defendants' objections to Plaintiffs' exhibits challenging the submitted affidavits of other inmates, a news article from 2022, and pre-2024 sick-call requests. DE 23 at 3 (citing DE 19-1 at 12, 17-18, 29, 34, 71-77). Defendants' objections are denied as moot insofar as I have not relied upon or considered the aforementioned exhibits. Defendants' broader objections to considering any of Plaintiffs' exhibits on grounds that they were provided shortly before the hearing are overruled.

now. I was just upset." *Id.* at 36. Objective examination notes indicate that Plaintiff was cooperative, appropriately attired, made good eye contact, had fair insight/judgment, and was fully oriented as to time, place, person, and situation. *Id.* at 36-37. An ideation section again documented "None" for suicidality, self-injury, and homicidality. *Id.* at 37. Plaintiff was assessed with single episode major depressive disorder and antisocial personality disorder. *Id.* at 38. Plaintiff reported "depression 4-5 times per week, rating a 5 out of 10 in intensity" and it was noted that follow-up checks "is/or will be scheduled." *Id.* On February 23, 2024, Plaintiff submitted an "Inmate Request" thanking MHP Salerno for "seeing me today about my mental health issues dealing with suicidal thoughts because of constant reprisal & excessive force by staff" and asking to be seen "in 2 ½ weeks." DE 19-1 at 19. None of the records indicate that Plaintiff reported imminent danger from suicide or an attempt to hang himself in the last few weeks as Plaintiff testified.

Having reviewed Plaintiff's complaint and exhibits, and having heard Plaintiff's testimony, I find that Plaintiff has failed to prove his claim of imminent danger of serious physical injury and has not established the imminent danger exception to the PLRA's three strikes provision.[5]

---

[5] In screening a complaint for IFP status under 28 U.S.C. § 1915, a court looks to the plaintiff's allegations in determining if the plaintiff has met his burden to sufficiently allege specific facts indicating that serious physical injury is imminent. *Brown v. Johnson,* 387 F.2d 1344, 1350 (11th Cir. 2004). A court is not authorized, at the IFP stage, to consider evidence from the opposing party. Thus, my conclusions in this Report and Recommendation are not based on evidence submitted by Defendants. That said, I acknowledge that counsel from the Office of the Florida Attorney General (OAG) appeared at the hearing on behalf of Defendants in this case and Assistant Warden John Holtz testified at the hearing. OAG offered additional administrative and medical records from January 2024, the time of the incident Plaintiff complains of and the filing of Plaintiff's lawsuit. Based on Plaintiff's classification contact log, Assistant Warden Holtz testified that Plaintiff was in administrative confinement on January 5, 2024 "pending disciplinary charges." DE 16-5 at 2. As part of his transfer to administrative confinement, Plaintiff was seen by medical staff on January 5, 2024 and it was documented that "[n]o injury seen or reported." DE 16-3 at 2. A few days later, on January 8, 2024, Plaintiff was again seen by mental health staff who interviewed him and reported that he "shows signs of mild to moderate mental or emotional impairment which can be managed on an outpatient basis" which "will" be provided by mental health staff. *Id.* at 3. Objective examination notes from this visit indicate that Plaintiff was cooperative, calm, adequately groomed, made good eye contact, was coherent, and was fully oriented as to time, place, person, and situation with good insight/judgment. *Id.* at 4-5. An ideation section documented "None" for suicidality, self-injury, and homicidality. *Id.* at 5. There was no mention in these records of the physical injuries Plaintiff claims he received as a result of an assault of January 5, 2024.

Plaintiff's claims of imminent danger are contradicted by medical records Plaintiff submitted from around January 2024 when this lawsuit was first filed. These records establish that Plaintiff was and continues to be regularly seen by medical staff, including mental health professionals. Available records during the relevant time document largely normal findings for Plaintiff. Multiple records indicate that Plaintiff did not report feeling suicidal or in severe distress, that he appeared fully oriented, was calm and cooperative, and appeared to be dealing with manageable depression and mild to moderate mental/emotional impairment. This access to continuous, ongoing professional care and treatment mitigates any suggestion that Plaintiff is in imminent danger of serious physical injury at the hands of prison officials and distinguishes this case from those cases in which the Eleventh Circuit has held that an inmate's allegations concerning his medical condition satisfied the "imminent danger" exception. *See Wright v. Sprayberry*, 817 F. App'x 725, 729 (11th Cir. 2020) (inmate met imminent danger exception where he alleged near total withdrawal of medical care, in that warden and deputy warden deprived him of his medication upon arrival at prison, prison's medical staff failed to treat him for open wounds, a broken hand, and a gum infection, and he developed the infection requiring dental extractions and leg sores from deep vein thrombosis, had untreated, open wounds, and had not received any medication for his serious medical conditions*); Smith v. Ward*, 848 F. App'x 853, 858 (11th Cir. 2021) (inmate satisfied imminent danger exception where he alleged his chronic hepatitis C had caused sores throughout his body, fatigue, vomiting, pain in the liver area, jaundice of skin and eyes, loss of appetite, hemorrhaging, and deterioration of other bodily organs, such that he was imminently threatened with danger without further treatment); *O'Connor v. Warden, Fla. State Prison*, 754 F. App'x 940, 942 (11th Cir. 2019) (inmate met imminent danger exception where he alleged he had not yet received an approved surgery, the continued delay of which was likely to cause his overall

physical condition to deteriorate); *O'Connor v. Backman*, 743 F. App'x 373, 376 (11th Cir. 2018) (inmate met imminent danger exception where he claimed he had suffered from severe gastrointestinal problems for years, which were exacerbated by prison personnel's withdrawal of appropriate medication and refusal to offer him an appropriate vegetarian diet, that symptoms included severe cramping, bloody stools, acid reflux, heartburn, and significant weight loss); *Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004) (inmate met 1915(g) where he alleged prison officials had withdrawn treatment for his HIV and hepatitis, and as a result, he suffered severe ongoing complications, was more susceptible to various illnesses, and his condition would rapidly deteriorate).

Considering Plaintiff's claims as a whole, I find that they do not rise to the level of circumstances similar to those recognized by the Eleventh Circuit as sufficiently imminent and dangerous to satisfy § 1915(g).  *See, e.g., Smith v. Clemons*, 465 F. App'x 835 (11th Cir. 2012); *Jacoby v. Lanier*, 850 F. App'x 685 (11th Cir. 2021).  Plaintiff is an admitted "three-striker" who has not made a colorable showing that he was under imminent danger of serious physical injury when he commenced this civil rights case.  Instead, Plaintiff's allegations of imminent danger are reminiscent of assertions he has set forth on multiple previous occasions in attempts to establish imminent danger, which have been rejected by more than one court.[6]  Plaintiff is thus barred from proceeding IFP and was required to pay the filing fee at the time he commenced this case.  Plaintiff did not pay the filing fee.  Accordingly, this case should be dismissed without prejudice.  *See Dupree*, 284 F.3d at 1236.

---

[6] U.S. District Judge Middlebrooks comprehensively summarizes Plaintiff's prior civil filings in the Northern, Middle, and Southern Districts of Florida.  *Lawson*, Case No. 24-14045-Civ-Middlebrooks, DE 5 at 3-5.  Plaintiff has filed over 25 prior civil cases in these districts.  As explained by Judge Middlebrooks, Plaintiff's allegations throughout these filings are virtually identical, claiming that numerous officers at various institutions threatened him, used excessive force, and denied him medical care.  The majority of Plaintiff's prior cases have been dismissed for lack of exhaustion, failure to state a claim, failure to pay the filing fee, under the three-strikes provision of § 1915(g), and as frivolous and for abuse of judicial resources.

Lastly, it bears noting that two U.S. District Judges in this judicial district have recently documented Plaintiff's "history of abusive and repetitive filings in this District" and have expressly cautioned Plaintiff against "continuing to file meritless lawsuits in federal court." *Lawson*, 2023 WL 5176378, at *8; *see also Lawson v. Rueda, et al.*, Case No. 24-14045-Civ-Middlebrooks, DE 5 at 9 (citing Judge Ruiz's Order and similarly finding it "appropriate and necessary to warn Plaintiff about his continued abuse of the judicial process" with the note that where an abusive inmate files multiple lawsuits against virtually every institution where he is confined, raising virtually identical claims, the claims of other litigants "'necessarily suffer' and '[g]rinds the wheels of the judicial system to a halt.'") (quoting *Procup v. Strickland*, 792 F.2d 1069, 1071–72 (11th Cir. 1986)).  I join these Judges in cautioning Plaintiff against knowingly abusing the judicial process by filing multiple lawsuits, sometimes within mere weeks of one another, raising virtually identical claims.  Such filings constitute a serious and unwarranted drain on our judicial system. By filing multiple civil cases that have been dismissed as frivolous, malicious, or for failure to state a plausible claim, Plaintiff has forfeited the opportunity to bring a civil rights case under the IFP statute while he is in prison. Since his designation as a "three striker" over six years ago, Plaintiff has continued to file lawsuits under the IFP statute while claiming that he is under imminent danger of serious physical injury.  None of these prior attempts have been successful, including his attempts in the two Southern District cases listed above and several other federal cases throughout the state of Florida, and – even after a hearing giving him an opportunity to substantiate his claims – he fares no better in this case.

Based on the foregoing, I respectfully **RECOMMEND** that:

1. Plaintiff's Complaint, DE 1, be **DISMISSED WITHOUT PREJUDICE** under under § 1915(g)'s three-strikes provision;

2. Plaintiff's Application to Proceed in District Court without Prepaying Fees or

      Costs, DE 3, be **DENIED**;

3. Plaintiff's Emergency Application to Proceed in District Court without Prepaying Fees or Costs, DE 5, be **DENIED**;

4. All other pending Motions, DE 24, DE 25, DE 27, be **DENIED AS MOOT**; and

5. The Clerk of Court be directed to **CLOSE** this case.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Kathleen M. Williams. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

      **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida this 19th day of April, 2024.

                                                          _____
                                                            SHANIEK MILLS MAYNARD
                                                            U.S. MAGISTRATE JUDGE

**Copies To:**
Avion Lawson, *pro se*
Inmate No. W38414
Martin Correctional Institution Inmate Mail
1150 SW Allapattah Rd,
Indiantown, FL 34956